Rcv'd by: AV

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
*Southern Division*

**KENNETH KELLEY**

**Petitioner**

v                                                           Civil Action No. GJH-20-03697

**WILLIAM S. BOHRER,** *Acting Warden,*
**MARYLAND ATTORNEY GENERAL**
**Respondents**

\*\*\*

## MEMORANDUM OPINION

In their Answer to the above-entitled Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, Respondents assert that Petitioner's claims are without merit. ECF No. 5. No hearing is necessary to resolve the matters pending. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2021); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. §2254(e)(2)). For the reasons set forth below, the Petition shall be granted.

**I.      Background**

**A. Guilty Plea**

Kelley was charged in a twenty-eight-count indictment in the Circuit Court for Prince George's County Maryland due to five deaths caused by Kelley's operation of a vehicle while impaired by alcohol. ECF No. 5-1 at 20-27. Counts One through Fifteen of the indictment charged Kelley with the five deaths under three different statutes:

<u>Counts One-Five:</u>

*Manslaughter by vehicle or vessel*

(b) A person may not cause the death of another as a result of the person's driving, operating, or controlling a vehicle or vessel in a grossly negligent manner.

Md. Code Ann., Crim. Law § 2-209 (in pertinent part)

Counts Six-Ten

*Causing the death of another by operation of vehicle or vessel in criminally negligent manner*

(b) A person may not cause the death of another as the result of the person's driving, operating, or controlling a vehicle or vessel in a criminally negligent manner.

Md. Code Ann., Crim. Law § 2-210 (in pertinent part)

Counts Eleven-Fifteen

*Homicide by motor vehicle or vessel while under the influence of alcohol or under the influence of alcohol per se*

(a) A person may not cause the death of another as a result of the person's negligent driving, operating, or controlling a motor vehicle or vessel while:
(1) under the influence of alcohol; or
(2) under the influence of alcohol per se.

Md. Code Ann., Crim. Law § 2-503 (in pertinent part)

A first offense conviction under § 2-210 was a misdemeanor with a maximum sentence of three years per count.[1] A first offense conviction under § 2-503 was a felony and carried a maximum penalty of five years per count.[2] A conviction under § 2-209 carries a penalty of ten years per count.[3]

---

[1] Section 2-210 was amended in 2016.

[2] Section 2-503 was amended in 2016.

[3] The remaining counts of the indictment, Sixteen through Twenty-Eight, charged Kelley with driving under the influence per se, driving while impaired by alcohol, driving unlicensed, reckless driving, negligent driving, failure to control speed and avoid collision with another

On December 17, 2015, the state offered Kelley a plea deal to Counts One through Five-manslaughter by vehicle (§ 2-209). The offer was predicated on a criminal history of two convictions and would have resulted in a sentence of fifty years, all but twenty suspended. ECF No. 5-1 at 31. Kelley rejected the state's plea offer and instead elected to plea to the indictment on March 27, 2017. *Id.* at 32-47.

A plea hearing was held on March 27, 2017. ECF No. 5-1 at 32-47. Before the hearing began counsel had a discussion with the judge, agreeing that the maximum sentence was fifty years. *Id.* at 33-34. Soon thereafter, the Circuit Court began a colloquy with Kelley. Despite the different degrees of mental culpability among § 2-209, § 2-210, and § 2-503 and the different penalties, the Circuit Court informed Kelley:

| | |
|---|---|
| The Court: | You understand the indictment contains 28 charges? |
| The Defendant: | Yes. |
| The Court: | And those charges range from manslaughter by auto to driving with an expired license with additional counts of manslaughter by vehicle, criminal negligence, neglect [sic] homicide by motor vehicle, homicide by vessel. *Many of these merge you understand. They're the same thing.* DUI per se, driving while impaired, driving without a valid license, reckless driving, negligent driving, failure to control motor vehicle to avoid a collision, failure to stop at a steady red light, and, again, driving with an expired license. Do you understand that? |
| The Defendant: | Yes. |

*Id.* at 36 (emphasis added). Also, despite the recent discussion where counsel had agreed the maximum penalty was fifty years, the court informed Kelley:

| | |
|---|---|
| The Court: | You understand that there are statutory penalties with these that could be 60, 70 years? Do you understand that? |

---

vehicle, failure to stop at a steady circular red signal, and driving vehicle on highway on expired license.

3

    The Defendant:      Yes, sir.

*Id.*

The Circuit Court advised Kelley, *inter alia*, that he had the right to a trial by jury and the state was required to prove the case against him beyond a reasonable doubt. *Id.* at 37. The Circuit Court also advised Kelley that he had the right against self-incrimination and the right to an appeal. *Id.* at 38-39. Kelley acknowledged his rights and advised the Circuit Court that he was freely and voluntarily waiving them. *Id.* at 38-39. The assistant state's attorney read the factual basis for the plea into the record:

> On October 10, 2014 at approximately 9:42 p.m., the victim's vehicle, which was a silver Acura TSX, was stopped at a red light in the left lane of the westbound Livingston Road at the intersection with Livingston Terrace in Oxen Hill, Prince George's County, Maryland. The vehicle was being driven by Hadasa Boykin. In the front passenger seat was Tiffany Wilkerson. In the rear right-hand-side seat was Tamika Curtis, also an adult. In the rear center seat was Khadja Ba, the daughter of Hadasa Boykin. She was 13 years old. And in the left rear set in a car seat was the son of Hadasa Boykin. He was one year old.
>
> At that time, the defendant, Kenneth Kelley, who is seated to my right in the white shirt, was driving a silver Mercedes S430 in the left lane of Livingston Road. As the defendant approached the intersection of Livingston Road and Livingston Terrace, he was driving approximately 65 to 70 miles per hour. The speed limit on Livingston Road in that area is 30 miles per hour. When the defendant came upon the victim's vehicle, which was stopped at the red light, he slammed his vehicle into the rear of that vehicle sending it spinning clockwise into a PEPCO pole on the other side of the intersection. The driver's side passenger door impacted the pole.
>
> Upon impact with the utility pole, the victim's vehicle spun around the pole and came to a final rest on the opposite side of the pole. The defendant's vehicle continued straight 255 feet past the intersection and came to a final rest in front of a gas station. In the defendant's vehicle was the defendant as the driver. The front-seat passenger was Robert Hall, who did survive the accident, and the rear-seat passenger was Dominique Green, and she did not survive the accident.
>
> In the victim's vehicle, the driver, Hadasa Boykin did survive the accident. The other four occupants of the vehicle did not survive the accident. All five

4

victims' autopsies reported their causes of death as multiple injuries and their manners of death as accident.

The defendant was taken to Medstar Washington Hospital Center with non-life-threatening injuries. His medical records show that he had an ethanol level of 173 milligrams per deciliter. Dr. Barry Levine, a forensic toxicologist, interpreted those records and calculated that his blood alcohol content at the time of the crash was a .14. Additionally, the defendant was driving on an expired driver's license. Witnesses would have testified that the defendant did not attempt to brake prior to the accident, rather slammed into the victim's vehicle at full speed of 65 to 70 miles per hour.

For the purposes of the plea, Your honor, that would have been the State's case.

*Id.* at 40-42.

Kelley agreed on the record that he had been speeding and that he had been drinking. *Id.* at 42. However, neither the trial judge nor his counsel explained to Kelley on the record the difference between the statutes charging him with the deaths of the victims. The Circuit Court found that Kelley had freely and voluntarily pled guilty and accepted his plea to all twenty-eight charges in the indictment. *Id.* at 44.

**B. Sentencing**

Kelley was originally scheduled for sentencing on May 12, 2017, but he failed to appear and was held in contempt. *Id.* at 12. A rescheduled hearing was held on June 9, 2017. *Id.* at 48-99. The assistant state's attorney argued that the Circuit Court should sentence Kelley under manslaughter by vehicle (§ 2-209), with the maximum penalty of ten years per count. *Id.* at 88. Kelley's counsel argued that he should be sentenced under homicide by vehicle while under the influence of alcohol (§ 2-503), with the maximum penalty of five years per count. *Id.* at 52-53. The Circuit Court sentenced Kelly under manslaughter by vehicle (§ 2-209), ten years per count, to run consecutively, for a total of fifty years incarceration. *Id.* at 97. He received an

additional 25 days for contempt of court. *Id.* Kelley's Motion for Reconsideration of Sentence, initially held in abeyance, was denied without prejudice on July 2, 2018. *Id.* at 14; 15-16.

### C. Direct Appeal and Post-Conviction

On June 29, 2017 Kelley filed a notice of appeal on the grounds that he received an illegal sentence. ECF No. 8-1 at 8. The Court of Special Appeals issued an order on October 30, 2017 dismissing Kelley's appeal because the record was not filed. *Id.* at 14. On April 15, 2019 Kelley filed a *pro se* application for post-conviction relief, which was subsequently amended when counsel enrolled.[4] ECF No. 8-1 at 23-31. Kelley raised two claims: (1) his plea was involuntary because he was not advised of the nature of the offenses, and (2) his plea was involuntary because it relied upon counsel's incorrect assertion that a plea to the indictment would result in a more favorable sentence than the plea offer from the state. ECF No. 8-1 at 24.

A post-conviction hearing was held on February 6, 2020. ECF No. 9. Kelley testified that his counsel read the charges to him. *Id.* at 9-10. Kelley testified that he had no understanding of the elements of the offenses or the maximum sentence. *Id.* at 12; 14-15. Kelley testified that he only understood that he "broke the law." *Id.* at 11. He testified that he pled to the indictment under counsel's advice because he thought he would get a sentence of less than thirty years. *Id.* at 12. Kelley acknowledged that he signed a waiver of rights form. *Id.* at 15. However, it was pointed out on cross-examination that the signature on the section of the form certifying that the attorney explained the elements to Kelley was not Kelley's signature. *Id.* at 15. Kelley

---

[4] At the beginning of the post-conviction hearing, Kelley dismissed the claims raised in his *pro se* petition and elected to proceed only with the two claims raised in his counseled petition. ECF No. 9 at 4-6.

6

acknowledged that his counsel went over the indictment with him, but he never read it himself.[5] *Id.* at 32.

Kelley's counsel, Antoini Jones, testified that he signed the section of the waiver of rights form acknowledging that he had gone over the elements of the crime with Kelley. *Id.* at 48. Jones also testified that the section on the form intended to state the maximum sentence was left blank. *Id.* at 62-63. Jones admitted he made no objection when the Circuit Court erroneously told Kelley at the plea hearing the potential sentence was up to 60, 70 years. *Id.* at 64. Jones testified that he was "not sure" that he explained the difference between gross negligence and criminal negligence to Kelley. *Id.* at 65-66. Jones testified that it was "arguably" part of the elements of the count. *Id.* at 65-66. Jones testified that the fact that Kelley was speeding, under the influence of alcohol, and ran into the rear of another vehicle "would augment—that would suffice for all of [the elements]." *Id.* at 66. Jones went on to reiterate that he explained to Kelley that the evidence was sufficient for a jury to find him guilty and for him to receive the maximum sentence of ten years for each count. *Id.* at 67.

Jones testified that it was his opinion that it was in Kelley's best interest to plead guilty to the indictment as opposed to the plea offer because he believed that "the incident wasn't something that was fully [intended] or anything like Mr. Kelley. It was an awful tragic mistake on his part. What he had told me transpired it was clear he had no intent of causing any harm to anyone." *Id.* at 42-43. Jones testified that Kelley would forgo a mitigation case at sentencing if he accepted the state's plea offer. *Id.* at 45.

---

[5] The indictment (ECF No. 5-1 at 20-27) lists the charges but does not include an explanation of the different elements required for a conviction under Counts One-Five, Six-Ten, and Eleven-Fifteen.

7

The Circuit Court issued an order on May 18, 2020 denying Kelley's post-conviction application. ECF No. 5-1 at 100-110. The Court of Special Appeals denied his application for leave to appeal on July 16, 2020. ECF No. 8-1 at 70-71.

### D. Petition for Habeas Corpus

Kelley submitted his federal Petition for habeas corpus relief on December 6, 2020. ECF No. 1. He asserts the same claims raised on post-conviction: (1) his plea was involuntary because he was not advised of the nature and elements of the offenses, and (2) his plea was involuntary because he relied upon trial counsel's incorrect advice that he would receive a more favorable sentence by pleading guilty to the indictment instead of accepting the plea offer from the state.

## II. Standard of Review

### A. Analysis Under 28 U.S.C. § 2254

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* 572 U.S.415, 419-20 (2014), quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable

application of clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Pursuant to the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett,* 559 U.S 766, 773 (2010).

9

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379.

### B. Analysis Under *Strickland*

Ineffective assistance of counsel claims are governed by the settled doctrine of *Strickland v. Washington*, 466 U.S. 668 (1984). It is equally settled that this doctrine applies to ineffective assistance claims asserted in connection with guilty pleas. *Fields v. Att'y Gen. of State of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992) *citing, Hill v. Lockhart*, 474 U.S. 52, 57 (1985). In *Strickland*, the Supreme Court explained that to show constitutionally ineffective assistance of counsel, Petitioner must show both deficient performance and prejudice—that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *Id.* at 687, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

To satisfy the performance part of the *Strickland* standard, Petitioner must demonstrate that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." *Id.* at 687. Petitioner must show that the attorney's performance fell "below an objective standard of reasonableness," as measured by "prevailing professional

norms." *Strickland*, 466 U.S. at 688; *see Harrington*, 562 U.S. at 104; *United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017). Judicial scrutiny of counsel's performance must be highly deferential and not based on hindsight. *Stokes v. Stirling*, 10 F.4th 236, 246 (4th Cir. 2021) (citing *Strickland*, 466 U.S. at 689). The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690).

Further, Petitioner must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). Under the Sixth Amendment, a defendant "has a right to effective representation, not a right to an attorney who performs his duties 'mistake-free.'" *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1910 (2017) (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147 (2006))."The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 788 (internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### III. Analysis

#### A. Ground One

In Ground One Kelley claims that his plea was involuntary because he was not advised of the nature and elements of the offenses.[6] When it denied Kelley's post-conviction petition, the Circuit Court found that Kelley's counsel did not state on the record during the plea hearing that he had gone over the nature and elements of the crimes with Kelley. Nor did Kelley state on the record during the plea hearing that he understood the nature and elements of the crimes. ECF No. 5-1 at 103. The Circuit Court made a factual finding that Kelley's counsel did not explain the nuances between the counts of gross negligence, criminal negligence, and negligence per se. *Id.* at 105. The Circuit Court also made a factual finding that it "is clear that the factual basis for the plea does not discuss or explain the nature/elements of the complex charges." *Id.*

The Circuit Court analyzed the voluntariness of the plea based on the standard set forth in *State v. Daughtry*, 419 Md. 35 (2011). The Circuit Court explained that *Daughtry* directs Maryland courts to consider the "complexity of the charge, the personal characteristics of the accused, and the factual basis proffered to support the court's acceptance of the plea." ECF No. 5-1 at 103. The Circuit Court noted the complex nuances between the legal definitions of "gross negligence" and "criminal negligence," concluding that "manslaughter by vehicle" is not easy to comprehend. *Id.* The Circuit Court determined that Kelley, at twenty-seven years old, had not finished high school and had no similar criminal history to inform him of the charges. *Id.* at 104. However, the Circuit Court ultimately concluded that Ground One was without merit because of

---

[6] Kelley uses the term of art "ineffective assistance of counsel" in one section of his pleading describing this claim. ECF No. 1-1 at 3. A holistic review of Kelley's claim leads the Court to the conclusion that he intended to re-assert the same claim that was brought during post-conviction proceedings, which was not an ineffective assistance of counsel claim. Respondents argue that any ineffective assistance of counsel claim is not exhausted and procedurally defaulted. ECF No. 5 at 16. The record reflects that Ground One was presented to the post-conviction court as a due process claim and not as an ineffective assistance of trial counsel claim. However, Ground Two was presented to the Circuit Court as an ineffective assistance of counsel claim and is not procedurally defaulted. ECF No. 8-1 at 30-31.

the content of the statement of facts that were read into the record and because Kelley stated on the record that he was guilty. The Circuit Court was also persuaded by the fact that Kelley signed a waiver form on the day of the plea hearing acknowledging that he understood the elements of the offense.[7] *Id.* at 106-107.

This Court cannot analyze Kelley's claim based on the standard set forth in *State v. Daughtry* because habeas relief is available for violations of federal law. *See Fletcher v. Wolfe*, No. CV TDC-15-0051, 2018 WL 1211535 at *5) (D. Md. Mar. 8, 2018) (citing *Estelle v. McGuire*, 502 U.S. 62, 68 (1991)). *See also Brown v. Maryland*, No. CV ELH-19-2176, 2022 WL 1451627, at *4 (D. Md. May 9, 2022).

A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences. Where a defendant pleads guilty to a crime without having been informed of the crime's elements, this standard is not met, and the plea is invalid. *Bradshaw v. Stumpf*, 545 U.S. 175, 182-183 (2005). In *Henderson v. Morgan*, the Supreme Court held that a guilty plea to second degree murder was involuntary when defense counsel did not fully explain to the defendant the intent requirement of the crime. 426 U.S. 637, 646 (1976).

Here, the Circuit Court made a factual finding that Kelley's counsel failed to explain the different mental culpability elements of manslaughter by vehicle (§ 2-209), causing the death of another by operation of a vehicle in a criminally negligent manner (§ 2-210), and homicide by motor vehicle while under the influence of alcohol (§ 2-503). The transcript of the plea hearing reveals that the Circuit Court never asked Kelley if he understood the elements of any of the

---

[7] The referenced waiver form is not included in the record provided by the state.

twenty-eight crimes with which he was charged. In fact, the Circuit Court incorrectly instructed Kelley that many of the crimes in which he was charged were "the same."

The three statutes under which Kelley was charged for the deaths of the five victims are not the same. To prove "gross negligence" under § 2-209, the prosecution must show that the defendant was conscious to the risk of human life posed by his conduct and acted with "wanton and reckless disregard for human life." To prove "criminal negligence" under § 2-210, the prosecution must show that the defendant should have been aware but failed to perceive that his or her conduct created a "substantial and unjustifiable risk" to human life and that this failure was a "gross deviation" from the standard of care of a reasonable person. Section 2-210 states a lesser degree of culpability than § 2-209. *See* 96 Md. Op. Atty. Gen. 128, Dec. 21, 2011.

The *Henderson* court determined that the failure to explain the element of intent and the difference between relevant degrees of crimes rendered a plea involuntary and the conviction a violation of due process. *Henderson*, 426 U.S. at 646. The *Henderson* decision does not require a complete enumeration of the elements of the offense to which a defendant pleads guilty, because "[n]ormally the record contains either an explanation of the charge by the trial judge, or at least a representation ... that the nature of the offense has been explained to the accused." *Henderson*, 426 U.S. at 647. The record in Kelley's case contains no such explanation or representation.

Even when the record does not contain an explanation, "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." *Id.* While there is usually a strong presumption that counsel has explained the elements of a charge to a defendant, in Kelley's case the Circuit Court made a finding of fact that Kelley's counsel failed to explain a critical element of the statutes in the indictment. The transcript of the post-conviction hearing support's this

14

conclusion. As in *Henderson*, "[t]here is nothing in this record that can serve as a substitute for either a finding after trial, or a voluntary admission, that [petitioner] had the requisite intent." *Henderson*, 426 U.S. at 646.

Indeed, Kelley was provided with *incorrect* information by the Circuit Court about the nature of the charges he was facing. Kelley was misled about the maximum penalties and was incorrectly advised that many of his charges were "the same." *See Hicks v. Franklin*, 546 F.3d 1279 (8th Cir. 2008) (Court deprived defendant of real notice of true nature of charge against him by incorrectly advising him the charge contained no *mens rea* requirement). The error was not inconsequential. The Circuit Court did not treat the charges as the same during sentencing when it elected to sentence Kelley under Counts One through Five, manslaughter by vehicle (§ 2-209), which required the greatest degree of mental culpability and carried the highest sentence.

Petitioner pled guilty to causing the collision under the influence of alcohol and while speeding, but he never admitted that he did so with the requisite mental culpability for a conviction of manslaughter by motor vehicle (§ 2-209). Before the plea hearing, Kelley never received any explanation of the nature of the charges against him by counsel and during the plea hearing he was misled by the Circuit Court that the nature of the charges against him were "the same." In these circumstances, the record does not establish that his plea was knowing.

The last reasoned state court opinion—the opinion denying post-conviction relief, relied on Maryland law to find Kelley's plea voluntary. Federal law dictates a different result. To the extent the post-conviction opinion can be construed to also rely on federal law, its conclusion is contrary to established United States Supreme Court precedent. The Circuit Court's opinion is also an unreasonable application of the law to the facts. The Circuit Court found that the plea was voluntary because of the factual basis that was read into the record and because Kelley said

he was guilty. This is contrary to United States Supreme Court precedent. It is not enough for the defendant to understand the facts of the crime. "Because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *McCarthy v. United States,* 394 U.S. 459, 466 (1969).

Finally, the fact that Kelley signed a canned waiver form is not sufficient to find that his plea was voluntary. Any effect of the waiver form is completely vitiated by the fact that counsel failed to explain the critical elements of the offenses and the fact that the Circuit Court misled Kelley about the nature of the charges during the plea hearing. In sum, the Circuit Court unreasonably applied the facts to the law considering: Kelley's testimony that he did not understand the elements of the charges (ECF No. 9 at 14-15), the Circuit Court's factual finding that Kelley's personal characteristics could not provide a basis for concluding that he understood the charges (ECF No. 5-1 at 104), the Circuit Court's factual finding that counsel failed to explain the critical elements of the charges (*id.* at 105), the Circuit Court's factual finding that "manslaughter by vehicle is not easy to understand" (*id.* at 103), the Circuit Court's factual finding that the factual basis read at the plea hearing "did not inform nor explain to Petitioner the elements of the more complex charges of manslaughter by vehicle" (*id.*), and the fact that the Circuit Court misstated the nature of the charges during the plea hearing (*id.* at 36). *See Bousley v. United States,* 523 U.S. 614, 618–19 (1998) (plea constitutionally invalid when neither petitioner, nor counsel, nor the court correctly understood the essential elements of the crime, even when the petitioner has received a copy of the indictment). Under these circumstances, reasonable jurists would not disagree that Kelley was not informed of the critical elements of manslaughter by vehicle (§ 2-209) and his guilty plea is invalid.

Kelley's guilty plea was involuntary and unknowing, and the judgment of conviction was entered without due process of law.

### B. Ground Two

In Ground Two Kelley alleges that he received ineffective assistance of counsel because his trial counsel advised him to reject the state's plea offer of fifty years, with all but twenty years suspended. Kelley contends that his counsel erroneously advised him that pleading to the indictment would result in a sentence of less than thirty years. The Circuit Court held that Kelley was not prejudiced by his counsel's advice to reject to the plea offer:

> Petitioner's claim that his guilty plea to the entire indictment was not made knowingly and voluntarily as he relied on trial counsel's incorrect assertion that an open plea would result in a lesser sentence also fails. Petitioner does not deny he was the one that rejected the 30 year plea deal. It is important to note this plea offer would have failed anyway since Petitioner had five prior convictions. Petitioner opted for an open plea in order to mitigate and offer argument for a lesser sentence. He was given the opportunity and based on the facts and circumstances of this case Judge Northrup had the right to render what he felt was an appropriate sentence.

ECF No. 5-1 at 109-110.

In the context of pleas, a defendant must show the outcome of the plea process would have been different with competent advice. *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (internal citations omitted). When counsel's advice leads to the rejection of a plea, the petitioner must show "that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 164.

As pointed out by the Circuit Court, the plea offer from the state contained the following caveat: "This offer is predicated upon the belief that [Kelley] has two prior convictions…Any information revealed in the PSI that would increase the Defendant's guidelines may change the terms of this plea." *Id.* at 31. Kelley had five prior convictions. Due to the state's warning in the plea offer about unknown prior convictions, Kelley cannot show that the plea "would not have been withdrawn in light of intervening circumstances" even if counsel had advised him to accept it.

The Circuit Court's dismissal of Ground Two was neither contrary to nor an unreasonable application of federal law. Ground Two is without merit.

## IV.   CONCLUSION

Because Kelley's guilty plea was involuntary, unknowing, and a violation of due process, the petition of Kenneth Kelley for a writ of habeas corpus is granted. His subject convictions and sentences are vacated and the case is remanded to the Circuit Court of Prince George's County for a new trial. However, this Court's judgment will be STAYED FOR THIRTY (30) DAYS to allow for an appeal or, absent an appeal, a decision by the Circuit Court of Prince George's County concerning Kelley's continued confinement.

By separate Order which follows, the Petition for Writ of Habeas Corpus shall be granted.

1/24/2023
Date

/s/ *signature*
GEORGE J. HAZEL
United States District Judge